

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-27-2009

# Estate of Harry Smit v. City of Wilmington

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2615

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

## Recommended Citation

"Estate of Harry Smit v. City of Wilmington" (2009). *2009 Decisions.* Paper 1658.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1658

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-2615

ESTATE OF HARRY SMITH III; HARRY SMITH, Jr., Individually
and as Administrator of the Estate of Harry Smith, III;
ROSLYN WOODARD SMITH, Individually and as
Administrator of the Estate of Harry Smith, III,
Appellants

v.

CITY OF WILMINGTON; JOHN CIRITELLA;
THOMAS DEMPSEY; MATTHEW KURTEN

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
(D.C. Civil No. 04-cv-01254)
District Judge: Honorable Gregory M. Sleet

Submitted Under Third Circuit LAR 34.1(a)
March 5, 2009

Before: BARRY, GREENBERG, <u>Circuit Judges</u>, and ACKERMAN,[*] <u>District Judge</u>

(Opinion Filed: March 27, 2009)

OPINION

---

[*] Honorable Harold A. Ackerman, Senior United States District Judge for the District of New Jersey, sitting by designation.

BARRY, <u>Circuit Judge</u>

Plaintiffs, parents of Harry Smith III ("Smith"), individually and on behalf of Smith's estate, appeal following a jury verdict in favor of the City of Wilmington and three Wilmington police officers on plaintiffs' 42 U.S.C. § 1983 claim of excessive force in violation of the Fourth Amendment and Delaware state law claim for wrongful death. Plaintiffs also appeal the order of the District Court dismissing their Fourteenth Amendment due process claim under Federal Rule of Civil Procedure 12(b)(6). Because the District Court did not err when it admitted certain evidence or when it dismissed plaintiffs' Fourteenth Amendment claim, we will affirm the final judgment of the District Court.

## I.

On September 13, 2003, Smith, age 25, sought treatment for mental health problems at a Wilmington hospital emergency room. Smith found a scalpel in the emergency room, stabbed himself in the chest, and ran outside. Wielding the scalpel, Smith approached a parked Mercedes-Benz and tried to gain entry, threatening the driver seated inside the car. Two police officers, Officer Johnny Whitehead and his partner, saw this unfolding and got out of their patrol car to confront Smith, leaving the engine running and emergency lights flashing. Smith jumped into the patrol car.

Smith and Officer Whitehead struggled inside the car, and Officer Whitehead shot Smith once in the leg. Smith nevertheless gained control of the patrol car and drove off.

About two dozen officers participated in the pursuit of Smith after notification by radio that shots had been fired and a police car had been stolen (the radio did not notify the officers of the attempted carjacking).

Officers blocked an intersection with their cars, at which point Smith drove toward the officers. Officers John Ciritella, Matthew Kurten and Thomas Dempsey responded by firing their weapons at the car as Smith continued to drive. A total of 31 bullets were fired; it was later discovered that Smith was killed by a bullet to the head fired from Officer Ciritella's weapon.

Smith's parents brought suit on behalf of themselves and Smith's estate with only § 1983 excessive force and state-law wrongful death claims going to trial. On April 17, 2007, after a seven-day trial, a jury found in favor of defendants on both claims.

**II.**

Plaintiffs argue on appeal that the District Court erred when it allowed evidence of the attempted carjacking that preceded the police pursuit and when it allowed testimony from Dr. Jon Nordby, a forensic expert, as to his expert opinion about Smith's body position when the bullet entered his head. Plaintiffs also argue that the Court erred when it dismissed their Fourteenth Amendment claim.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's evidentiary rulings for abuse of discretion and its order of dismissal under Rule 12(b)(6) de novo.

## A. Attempted Carjacking

Plaintiffs argue that the District Court erred when it admitted evidence of the attempted carjacking because that evidence was unduly prejudicial and irrelevant. We disagree.

Prior to trial, plaintiffs moved to exclude any evidence that Smith was involved in an attempted carjacking prior to his interaction with Officer Whitehead. The Court ruled that evidence of the confrontation surrounding the Mercedes was probative, but elicited the agreement of the defense that it would not seek to characterize the confrontation as a carjacking, thus limiting whatever prejudice that evidence may have caused. Despite this, counsel for plaintiffs stated, in her opening statement:

> Harry Smith, III then ran up to a gentleman who was in a Mercedes, a gray Mercedes, and was bamming on the car door and pulling on the car door, as though he was trying to enter that car. He had moments before been diagnosed as having hallucinations, mental health problems, and they had already at the hospital proceeded to check him in. The gentleman in the gray Mercedes thought he was being carjacked. He was scared and he should have been. (Supp. App. at 283.)

The District Court correctly concluded that evidence of the attempted carjacking was relevant to provide context regarding the confrontation between Smith and Officer Whitehead and probative of how Smith came to be behind the wheel of the patrol car. After weighing the probative value of the evidence against the potential for unfair

prejudice, the Court declined to exclude the evidence.[1]  The Court did not abuse its

discretion in so doing.

## B.    Admissibility of Expert Testimony

We review a District Court's decision to admit expert testimony for abuse of

discretion.  Pineda v. Ford Motor Co., 520 F.3d 237, 243 (3d Cir. 2008).

Plaintiffs argue that the District Court should not have permitted Dr. Nordby to

testify as to Smith's body position when the bullet entered his head because Dr. Nordby

could not have determined the bullet's trajectory without the window glass, which the

parties agree was shattered and therefore unavailable for analysis.  Plaintiffs first raised

this argument in a motion in limine; the Court denied the motion, recognizing that Dr.

Nordby's opinion regarding the bullet's trajectory did not rely on the glass, but on the

blood stain pattern evidence inside the vehicle and the report of the medical examiner.

During argument on the motion, the Court suggested that plaintiffs' concerns about the

factual basis for Dr. Nordby's testimony could be resolved via cross examination, which

had already taken place (Dr. Nordby's testimony was videotaped).  In response to the

Court's question, the following significant exchange took place:

---

[1]  In any event, and as defendants point out, plaintiffs waived their right to challenge
this ruling when they called Officer Whitehead in their case-in-chief and questioned him
about the attempted carjacking.  See Ohler v. United States, 529 U.S. 753, 755 (2000)
(holding that a criminal defendant waived his right to appeal an unfavorable ruling on his
motion in limine when he testified to the evidence on direct examination for strategic
purposes); see also Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc., 439 F.3d 894,
904 (8th Cir. 2006) (extending this principle to evidence in a civil trial).

Counsel: But as we have been going through the motion, what I believe is that the appropriate way to deal with this expert is with the cross that I have done.

The Court: So are you withdrawing the motion?

Counsel: I am leaving the motion there.

The Court: I am going to deny the motion. (App. at 235.)

Because plaintiffs conceded that cross examination was an appropriate way to deal with Dr. Nordby's testimony, effectively failing to object to admission of the evidence, we review for plain error, and see none here. See United States v. Mornan, 413 F.3d 372, 379 (3d Cir. 2005). But whether we review for plain error or for abuse of discretion, we find no error in the Court's determination that Dr. Nordby had a sufficient factual basis for his opinion as to Smith's body position.

## C.    Fourteenth Amendment Claim

Plaintiffs argue that the District Court erred when it dismissed their Fourteenth Amendment due process claim because it erroneously concluded that the claim was for loss of companionship, when the claim was actually based on a property interest created by Delaware's wrongful death statute.[2] Even if plaintiffs could establish a constitutionally protected property interest created by the Delaware statute, they submitted no evidence that they were deprived of this interest by a person acting under

---

[2] To the extent that plaintiffs' claim is properly characterized as a claim for loss of companionship, the District Court correctly concluded that the parents' interest in the companionship of their independent adult child is not a constitutionally protected liberty interest within the meaning of the Due Process Clause. See McCurdy v. Dodd, 352 F.3d 820, 830 (3d Cir. 2003).

color of state law, as they were required to do under 42 U.S.C. § 1983.  Indeed, plaintiffs fully litigated their wrongful death claim at trial and fail to show how the pretrial dismissal of the Fourteenth Amendment claim impacted the result of the trial in any way.

### III.  Conclusion

We will affirm the judgment of the District Court.